# Appeal of Modesto Del Valle, Francisco del Valle, and Jose Maria del Valle.

---

# Appeal of Antonio Yznaga, Executor of the Last Will and Testament of Francesca del Valle.

The estate of a nonresident decedent will not be remitted to the domicil of the decedent for distribution, on the request of foreign creditors of a

Cited in Laughlin v. Solomon, 180 Pa. 177, 180, 40 W. N. C. 2, 57 Am. St. Rep. 633, 36 Atl. 704.

NOTE.—The report of this case is to be found in the lower court *sub nom.* Del Valle's Estate, 17 W. N. C. 30.

Assets found within the ancillary jurisdiction pass to the ancillary administrator (Willing v. Perot, 5 Rawle, 264); and are to be used primarily

for the payment of indebtedness to residents. Barry's Appeal, 88 Pa. 131; Laughlin v. Solomon, 180 Pa. 177, 40 W. N. C. 2, 57 Am. St. Rep. 633, 36 Atl. 704. The balance will be remitted in the discretion of the court to the legatee, where the legatee's interest is claimed by voluntary assignment from the legatee and by attaching creditors in the hands of the ancillary administrator, notwithstanding proceedings in bankruptcy against the legatee at the domicil.

(Decided April 19, 1886.)

Appeal from Orphans' Court of Philadelphia County to review a decree distributing the estate of a nonresident decedent to attaching creditor and assignee of legatee. Affirmed.

These proceedings arose in the orphans' court of Philadelphia county upon the audit of the account of John Lowber Welsh, ancillary administrator *cum testamento annexo* of the estate of Francesca del Valle, deceased. The decedent had her domicil in the island of Cuba. Her will was there probated and letters testamentary executed to her son José Maria Yznaga, who subsequently resigned, and, by the terms of the will, his brother, Antonio Yznaga, was substituted as executor in his place. The decedent was possessed of large estates in the island of Cuba, and also of personal securities consisting of American municipal and corporate stocks and bonds to an amount exceeding $1,000,-000, which were in the custody of her agents in Philadelphia, Messrs. S. & J. Welsh.

For the purpose of administering upon this fund, ancillary letters were granted to the accountant. No creditors of the decedent appeared as claimants against the fund.

The further facts are stated by the adjudication of the auditing judge, ASHMAN, J., as follows:

The residuary estate of the decedent passed under her will, in equal shares, to her five children. Distribution has been decreed as to four of the children, and the fund respecting which distribution is now asked consists of the share of decedent's

domiciliary administrator. Laughlin v. Solomon, 180 Pa. 177, 40 W. N. C. 2, 57 Am. St. Rep. 633, 36 Atl. 704. But if there be no creditors at the place of domicil, it seems that the distribution may be made in this state. Dent's Appeal, 22 Pa. 514; Welles's Estate, 161 Pa. 218, 26 Atl. 1116, 1117; Parker's Appeal, 61 Pa. 478. Where the construction of legal questions involved depend on the law of the domicil state, the court may order the fund remitted to the administrator there. Ruebsam's Estate, 26 W. N. C. 311; Harlan's Estate, 16 Pa. Co. Ct. 51, 3 Pa. Dist. R. 809, 1 Lack. L. News, 122; Yerkes's Estate, 8 Pa. Dist. R. 36.

daughter, Dona Natividad Yznaga de Acosta, and amounts to $260,214.95.

Four of the children of Natividad, to wit: Fernando, Francisco, José Antonio, and Doña Ana Antonia, who claim as creditors of their mother, ask that the fund may be remitted for distribution to the executor at the domicil.

Distribution in this forum is asked by Don Antonio Modesto del Valle, who also claims as creditor of Natividad del Valle, by virtue of a judgment obtained against her estate in $68,995.99, with interest at 8 per cent per annum from June 16, 1884, in common pleas, No. 2, of March term, 1885, No. 353, and an attachment in execution thereunder.

The fund, subject to the above attachment, is also claimed by William W. Gibbs, under an assignment dated March 26, 1885, by Doña Natividad, through her duly constituted attorney in fact.

The claim of the children is founded upon the following state of facts: Don Antonio Modesto, the husband of Doña Natividad, died June 19, 1863, leaving a will by which he constituted his eight children his universal heirs and legatees, and appointed his widow guardian of seven of them, who were minors. The widow took possession of the entire estate, and the shares of the minors were formally ascertained by appropriate legal proceedings in Cuba, where they resided and where the property was situated.

Doña Natividad remarried in 1864, and shortly thereafter executed an instrument entitled "Public Document of Security," by which, under formalities prescribed by the Spanish law, she acknowledged her indebtedness and its amount to her children, and pledged its payment in instalments.

She did actually pay to two of said children, Don Antonio Modesto and Don Fernando, their respective shares in full. She also paid a large part of his share to José Antonio. The other children are unpaid.

In 1880 she presented her petition in Cuba, asking to be adjudged a bankrupt. Proceedings thereunder are still pending.

The children of Doña Natividad rested their claim, not only upon the pledge contained in the public document of safety, by which the guardian mortgaged her property in their favor, but upon the law of Spain, which created for their benefit, as wards at the moment their property was appropriated by the guardian,

a tacit mortgage or preferred lien upon all of the property of the guardian, present and prospective, which could only be satisfied by full payment of their patrimony. They contended, also, that the assignments executed by their mother to the other claimants were void, because executed by her while a bankrupt and before discharge; and they prayed that the fund might be awarded directly to them, or else remitted for distribution under the laws of Cuba, to the executor residing there.

The principles which rule in the distribution of a fund belonging to a foreign decedent may be briefly stated thus:

Creditors, foreign and domestic, within the ancillary jurisdiction, upon proving their claims, are entitled to be paid, the latter class being preferred. Many cases say that, after settlement with domestic claimants, the balance of the fund should be transmitted to the executor at the domicil.

In Barry's Appeal, 88 Pa. 131, the reason for this action was said to lie in the presumption that the funds might be needed at the domicil for the payment of decedent's debts, and that the home tribunals are the only ones competent to pass intelligently upon those debts and the order of their settlement. [But the great weight of authority has decided that a foreign creditor or other distributee, who is diligent enough to present his claim at the ancillary forum, shall be regarded as a domestic claimant, and shall be allowed to come in upon the ancillary fund.]

The will, if there is a testacy of personal property, shall be construed by the law of the decedent's domicil. If, for instance, the testator gives his estate to those who would otherwise be entitled under the statutes of distribution, the law of distribution of the country of his domicil, and not the law of distribution in which his property may happen to be, will determine his legatees. But in the awards to others than legatees the *lex fori* will govern. The right of priority between such distributees will be settled by that law.

"The right of priority," says MARSHALL, Ch. J., in Harrison v. Sterry, 5 Cranch, 298, 3 L. ed. 106, "forms no part of the contract itself. It is extrinsic, and is rather a personal privilege dependent on the law of the place where the property lies, and where the court sits which is to decide the cause. In the familiar case of the administration of the estate of a de-

ceased person, the assets are always distributed according to the dignity of the debt as regulated by the law of the country where the representative of the deceased acts and from which he derives his powers; not by the law of the country where the contract was made."

If a foreign legatee or other distributee can thus claim his share in a court of ancillary jurisdiction, his creditor, who stands in his shoes, may intervene. Such a creditor, however, must claim by virtue of an assignment which transfers the ownership of the fund, or after a lien which binds it. But it is very evident that no foreign judgment or mortgage can have any extra-territorial efficacy; for the reason that no government can by its own laws create or authorize a lien upon property beyond its control.

How, then,. does this case stand? [Doña Natividad, under the will of the testatrix, duly proved in Cuba, is unquestionably the legatee of this fund. Her assignees, by assignments duly executed under the laws of the domicil, on one of which judgment has been had in this county, claim the fund as her legal representatives. If she is primarily entitled to it, they are entitled as her delegates.]

It cannot be objected that the assignor could confer no valid title to her assignees until the conditions had been fulfilled to which in the document of security she bound herself "with all her present and future property," because that property was expressly described as property "under the jurisdiction and submission of the laws of His Majesty" the King of Spain. [It is unnecessary to consider how far this instrument would be effective as against afteracquired property of the obligor, inasmuch as by its own terms it excludes the fund in hand for its operation.]

[But it was urged that the assignments are void because they were made after bankruptcy and before discharge. Only one person, however, the assignee in bankruptcy, is competent to make that objection, and he does not appear. Besides, the assignment in bankruptcy did not reach the bankrupt's estate in Pennsylvania.]

This was expressly decided in Abraham v. Plestoro, 3 Wend. 538, 20 Am. Dec. 738, where it was held that an assignment under the bankrupt law of England did not effect a legal transfer of the property in this country to the assignee.

Nearly the same language was used by Judge MARSHALL in Harrison v. Sterry, 5 Cranch, 298, 3 L. ed. 106, who said: "The bankrupt law of a foreign country is incapable of operating a legal transfer of property in the United States." It follows that Doña Natividad had the power to dispose of the fund notwithstanding her bankruptcy.

It was also objected that the legatee was a trustee for her children, and that, in favor of the latter, the foreign law regarded the property of the trustee, both that in possession and that in expectancy, as pledged by way of mortgage for the safety of the trust; and upon this ground, mainly, the *cestuis que trust* ask that the fund may be adjudicated at the domicil. This demand certainly appeals with force to every equitable consideration.

But the *cestuis que trust* are not the only parties who have an interest in the fund, and in common with other creditors they must establish the validity of their demands in accordance with the law whose aid they have sought. It is their misfortune, perhaps, that they are before a court the machinery of which is not adapted to meet the needs of their case. Even if it had the authority, it would be impracticable for the orphans' court to ascertain the present amount of a claim which accrued twenty-two years ago, and which may have involved innumerable dealings between the parties since.

The claim is described as a lien; but the lien has no existence in writing, and it is of a kind, not only wholly unknown to our jurisprudence, but is subversive of some of the principles of our law. Admitting its validity as a lien under the laws of Cuba, it nevertheless can bind no fund beyond the limits of Cuba and therefore beyond the grasp of its laws and the attachment, which was based upon the lien, covered only the property which the lien embraced.

The apparent hardship is mitigated when it is remembered that at the time this lien upon the property of the guardian was accepted as a security against her indebtedness, it could never have been imagined that the mother of the minors would acquire property in a foreign state, and in an absolutely unknown right. It is further mitigated by the fact that the children are not without remedy even in this jurisdiction; it was open to them to have secured a judgment in the common-law courts, and

through that to have created a lien which would have placed them on a footing of equality with other claimants here.]

[There are two sides to this dilemma. One at least, of the claimants under the assignments is an American citizen suing in an American court. But on the plea of hardship to alien creditors we are asked to remit the fund to Cuba, and, as a consequense, to remand a citizen of this country to establish his claim before a foreign tribunal.]

Where the contest is wholly between foreign assignees and other foreign creditors, the laws of the place where the assignment was made will govern.

This was the doctrine of Vanbuskirk v. Warren, 34 Barb. 457; May v. Wannemacher, 111 Mass. 202, and of other decisions cited therein.

[This doctrine would be applicable, perhaps, where foreign creditors appear against the estate of a foreign decedent; but not to the case of a legatee whose share, as here, has been ascertained, and who is present claiming it. It seems there to be the duty of the court to award the share to the legatee or to creditors standing in her place by assignment from her, or by a lien which is binding at the place of settlement, and to save the expenses of further administration at the domicil.] Dent's Appeal, 22 Pa. 514.

It was argued finally, against the jurisdiction of this court, that the fund for distribution has no situs, because it follows the person of its owner. This principle has been frequently applied where government, and perhaps corporation, loans, belonging to nonresidents, are the subject of inquiry; and it has been held that upon such property a state tax could not be levied, because neither the property nor the owner was within the state. It has also been held that where these evidences of indebtedness are held by a depositary for safe keeping merely, they may be delivered to a foreign executor. [But when this species of property is in course of administration under the laws of the state where it physically is, it has a situs so far that domestic and foreign claimants who appeal to those laws and prove their demands shall be allowed to take it.]

It may be considered as part of the settled jurisprudence of this country, that personal property as against creditors has locality, and the *lex loci rei sitæ* prevails over the law of the domicil with regard to the rule of preferences in the case of in-

solvent estates. The laws of other governments have no force beyond their territorial limit, and, if permitted to operate in other states, it is upon principles of comity, and only when neither this state nor its citizens would suffer any inconvenience from the application of the foreign law. Per SARGENT, J., in Dunlap v. Rogers, 47 N. H. 287, 93 Am. Dec. 433.

The parties in interest submitted their case in the shape of formal pleadings. A petition asking for the transmission of the balance to Cuba, for home adjudication, was presented by the four children of Doña Natividad, and demurrers thereto were filed by the other creditors. The demurrers are accordingly sustained. But if the auditing judge is correct in what he has said, it will be useless for the children to take testimony to determine the amount of their claim under a lien which cannot be recognized by our laws. Whether they shall be permitted to proceed will be decided by the court in banc, on exceptions to this adjudication.

The fund was awarded to Don Antonio Modesto del Valle and to William W. Gibbs in order of priority of their claims; the claim of Don Antonio Modesto being awarded payment in full, and the claim of William W. Gibbs being awarded the balance.

Exceptions were filed by Antonio Yznaga, executor, and Modesto, Francisco, and José Maria del Valle, to the adjudication. The portions of the opinion in brackets were, *inter alia,* made grounds of exceptions.

The exceptions were dismissed by the court in banc in an opinion by PENROSE, J., as follows:

It is well settled that the assets will not be remitted to the administrators or executor of the domicil when there are claimants within the jurisdiction of the ancillary administration, and it is affirmatively shown or admitted that there are no debts to be paid and no open accounts, as between the decedents and a distributee, making such remission necessary or proper. Dent's Appeal, 22 Pa. 514; Parker's Appeal, 61 Pa. 478.

It is equally well settled that one having no direct interest in the estate itself, as a creditor of a legatee or distributee, not claiming under an attachment, cannot demand an account, and, as a necessary consequence, cannot, when an account is filed, interfere in its settlement or in any proceeding based upon it. Keene's Appeal, 60 Pa. 504; Greiner's Estate, 2 W. N. C. 292.

Unless, therefore, we are prepared to decide that greater rights are to be accorded to the foreign creditors of a distributee than are possessed by those residing within our jurisdiction, we cannot recognize the exceptants in the present case as having a status before us.

It is conceded that the distribution has been properly awarded as to four fifths of the estate; all but the share of one legatee. Upon what principle or by what authority shall it be withheld from the latter, or from those claiming under her by assignment? It is true, for certain purposes, that personal property is said to have no situs, and at the death of the owner questions as to the execution and validity of his will, or as to distribution in case of intestacy, are to be determined by the law of the domicil. The authorities referred to by the counsel for the exceptants are illustrations of this doctrine. But when the distributee has been thus ascertained, the operation of the law of the domicil, so far as the ancillary administration is concerned, is at an end; the situs of the property is such as the new owner may think proper to give it; and his creditors have only such right to interfere with his power of disposal as they may acquire under the laws of the place where the property actually is.

Liens obtained at the domicil have no extra-territorial force. Even as between the various states of the United States, a judgment or decree obtained in one is only available as a basis of suit in another; and as between foreign states the case is still stronger. Personal incapacities or forfeitures of rights of ownership, so far as they arise from judicial proceedings, are of a penal or quasi penal character, and, clearly, cannot be recognized beyond the limits of the country under whose laws they have been declared (Milne v. Moreton, 6 Binn., 353, 6 Am. Dec. 466; Wharton, Conf. L. §§ 122, 332, 390, 799); though a voluntary assignment actually made by an insolvent will pass his property, real as well as personal, wherever it may be. Lamb v. Fries, 2 Pa. St. 83, 85.

An assignment by mere operation of law during the lifetime of the owner, as in case of bankruptcy or other similar proceeding, has no such operation so far as concerns personal property in a foreign state. Milne v. Moreton, 6 Binn. 353, 6 Am. Dec. 466.

It is clear that the executor of the domicil cannot demand the

remission of the share of one legatee while he admits the propriety of the distribution as to the others for this concedes that the balance shown by the account is not required for the payment of the debts of the testatrix, and it is not pretended that the legatee is indebted to the estate. The only effect of remission, therefore, would be to subject this share, in the hands of the executors as garnishees under process having no operation in this state, to the claim of creditors having themselves no right to interfere here. And even domestic creditors who have obtained no lien by attachment or otherwise cannot be heard to impeach the validity of assignments by their debtor. Stewart v. Coder, 11 Pa. 90; M'Gee v. Campbell, 7 Watts, 545, 32 Am. Dec. 783; Ludlow v. Dutton, 1 Phila. 226.

As the distribution directed by the adjudication is opposed by no one having a recognized status in this court, it follows that the exceptions must be dismissed; provision, however, being made in the decree for the protection of the accountant as garnishee in the foreign attachments referred to in his exceptions.

And now, November 7, 1885, the above exceptions having been argued and having been duly considered, it is ordered and decreed as follows: I. That said exceptions be dismissed, the adjudication finally confirmed, and that the accountant pay to the attorneys of Antonio Modesto del Valle and of Wm. W. Gibbs, assignees of Natividad Yznaga del Valle, the sums named in the schedule of distribution attached to said adjudication.

II. That no process issue upon this order until after the determination of three certain writs of foreign attachment now pending against the accountant as garnishee, issued out of the court of common pleas, No. 4, of Philadelphia county, of June term, 1885, on the 29th day of May, 1885, numbered 238, 239, and 240 respectively, in one of which, No. 238, Modesto del Valle was plaintiff; in another of which No. 239, Francisco del Valle was plaintiff, and in the third of which, No. 240, José Maria del Valle was plaintiff, and in all of which Doña Natividad was defendant. The said assignees to intervene in said foreign attachments.

The exceptants thereupon took this appeal, assigning as error the dismissal of the exceptions indicated above.

*Richard C. Dale, Samuel Dickson* and *John C. Bullitt,* for appellants.—To decree distribution in the ancillary forum to Natividad Yznaga and her assignees diverts the estate from those who show they would be entitled to receive it were it transmitted to the domicil; and hence it should be remitted to the principal executor in order that the rights of the conflicting claimants may be passed upon by the court of the domicil. Stokely's Estate, 19 Pa. 476; Orcutt's Appeal, 97 Pa. 179; Barry's Appeal, 88 Pa. 131; Goodall v. Marshall, 11 N. H. 88, 35 Am. Dec. 472; Probate Court v. Kimball, 42 Vt. 323.

The foundation of the rule that assets should be transmitted to the domicil, in the absence of cause shown to the contrary, is that the real situs of such assets is the testator's dimicil. McKeen v. Northampton County, 49 Pa. 519, 88 Am. Dec. 515; Commonwealth's Appeal, 11 W. N. C. 493; Kintzing v. Hutchinson, 7 W. N. C. 226; Desesbats v. Berquier, 1 Binn. 336, 2 Am. Dec. 448.

In De Renne's Estate, 12 W. N. C. 94, a testator who died domiciled in Georgia created a trust for accumulation, valid under the laws of Georgia, but void according to the law of Pennsylvania. It was held that the fund should be remitted to the domicil of the testator for distribution.

One of the fullest discussions of this question is found in the opinion of KING, J., in Kohne's Estate, 1 Pars. Sel. Eq. Cas. 399. The direct point decided was the power of attorney of a minor, who had not reached her majority by the law of her domicil, would not be recognized here although by the law of the forum she was of full age.

Although foreign bankruptcy decrees and transfers of title by operation of foreign laws will not be recognized where the rights of domestic creditors or purchasers are involved, the force of such foreign decrees or laws cannot be questioned by a litigant who owes allegiance to these foreign laws. Mulliken v. Aughinbaugh, 1 Penr. & W. 117; Bagley v. Atlantic M. & O. R. Co. 5 W. N. C. 263; Wilkins v. Ellett, 9 Wall. 740, 19 L. ed. 586; Wilkins v. Ellett, 108 U. S. 256, 27 L. ed. 718, 2 Sup. Ct. Rep. 641; Black v. Zacharie, 3 How. 513, 11 L. ed. 704.

The title to the personal estate of a decedent, wheresoever it may be situated, passes to the executor upon the probate of the will at estator's domicil; the grant of ancillary letters is only made requisite by local statutes for the purpose of protecting

the interests of local creditors. Milne v. Moreton, 6 Binn. 253, 6 Am. Dec. 466; Harrison v. Sterry, 5 Cranch, 289, 3 L. ed. 104; Ogden v. Saunders, 12 Wheat. 213, 6 L. ed. 606; Smith v. Union Bank, 5 Pet. 518, 8 L. ed. 212; Green v. Van Buskirk, 7 Wall. 139, 19 L. ed. 109.

The appellees Antonio Modesto del Valle and W. W. Gibbs are not purchasers for value, but simply naked assignees of the title of Natividad Yznaga, and therefore stand in her shoes; the question is, therefore, to be determined as if the contending parties were Natividad Yznaga and her late wards, the appellants.

*Morgan & Lewis, Coudert Brothers* and *F. Carroll Brewster,* for appellees.—The law which regulates the assignment of movables is the *lex situs.* Wharton, Confl. L. §§ 121, 297, 305 *a,* 278, 308 *d,* 309 *e,* 310 *f.* 329, 101 *et seq.,* 330, 331,332, 99 *et seq.,* 338-346, and New York cases cited in notes, 347 and New Hampshire cases cited, 349 and Connecticut cases cited, 350 and Pennsylvania cases; Castrique v. Imrie, L. R. 4 H. L. 435; Van Grutten v. Digby, 31 Beav. 561.

Bankruptcy proceedings are not allowed extra-territorial effect as against domestic attaching creditors. Wharton, Confl. L. § 390 *a, b,* and cases cited; Hunt v. Jackson, 5 Blatchf. 349, Fed. Cas. No. 6,893; Davis v. Wood, 1 Wheat. 6, 4 L. ed. 22; Hibernia Nat. Bank v. Lacombe, 84 N. Y. 367, 38 Am. Rep. 518; Story, Confl. L. §§ 239 403–418, 594; Sanford v. Sanford, 58 N. Y. 68; Re Waite, 99 N. Y. 433, 2 N. E. 440; Milne v. Moreton, 6 Binn. 353, 6 Am. Dec. 466.

All rights to personal property are admitted to be regulated by the laws of the country in which the testator lived; but the suits for those rights must be governed by the laws of that country in which the tribunal is placed. Dixon v. Ramsay, 3 Cranch, 322, 2 L. ed. 454; LeRoy v. Beard, 8 How. 464, 12 L. ed. 1158; Townsend v. Jemison, 9 How. 407, 13 L. ed. 194; Jones v. Drewry, 72 Ala. 311; Pratt v. Douglas, 38 N. J. Eq. 516; Warner v. Jaffray, 96 N. Y. 248, 48 Am. Rep. 616; Bank of United States v. Donnally, 8 Pet. 362, 8 L. ed. 974; Harrison v. Sterry, 5 Cranch, 298, 3 L. ed. 107.

When the *lex loci contractus* and the *lex fori,* as to conflicting rights acquired in each, come in direct collision, the comity of nations must yield to the positive law of the land. 2 Kent, Com. 461, 599; Ogden v. Saunders, 12 Wheat. 213, 6 L. ed. 606;

Baker v. Wheaton, 5 Mass. 509, 4 Am. Dec. 71; Rice v. Harbeson, 63 N. Y. 493; M'Elmoyle v. Cohen, 13 Pet. 324, 10 L. ed. 188; Morgan v. Neville, 74 Pa. 52; Bolton v. Pennsylvania Co. 88 Pa. 261; Kelly v. Davenport, 1 Browne (Pa.) 231; Donald v. Hewitt, 33 Ala. 534, 73 Am. Dec. 431; Crapo v. Kelly, 16 Wall. 620, 21 L. ed. 435; Lanfear v. Sumner, 17 Mass. 110, 9 Am. Dec. 119; Green v. Van Buskirk, 7 Wall. 139, 19 L. ed. 109; Scudder v. Union Nat. Bank, 91 U. S. 406, 23 L. ed. 245; Booth v. Clark, 17 How. 322, 15 L. ed. 164; Steel v. Smith, 7 Watts & S. 447; Hibernia Nat. Bank v. Lacombe, 84 N. Y. 367, 38 Am. Rep. 518; Wood v. Parsons, 27 Mich. 159; Wharton, Confl. L. §§ 324, 390, 624.

Assets are not to be transmitted to the administrator of the domicil when there are claimants within the jurisdiction of the ancillary administrator. Parker's Appeal, 61 Pa. 478; Dent's Appeal, 22 Pa. 514; Freeman's Appeal, 68 Pa. 157; Barry's Appeal, 88 Pa. 131; Miller's Estate, 3 Rawle, 312, 319, 24 Am. Dec. 345.

A lien upon the fund is absolutely essential and requisite to the right to be heard of a party who presents himself before the court, not as a creditor of the decedent, but as a creditor of a beneficiary under the will. Ludlow v. Dutton, 1 Phila. 226; Stewart v. Coder, 11 Pa. 90; M'Gee v. Campbell, 7 Watts, 545, 32 Am. Dec. 783; Rhoads's Appeal, 11 W. N. C. 276; Keene's Appeal, 60 Pa. 504; Greiner's Estate, 2 W. N. C. 292.

PER CURIAM:

These two appeals are from the same decree. They were argued together. After a careful consideration of the case we are well satisfied with the correctness of the conclusion at which the learned judge of the orphans' court arrived, and with the reasons therefor contained in his opinion dismissing the exceptions. Therefore, on that opinion,—

Decree affirmed and appeals dismissed, at the costs of the respective appellants therein.