## Hall's Estate,

*Practice, O. C. — Ancillary administrator — Payment of balance to domiciliary executor or administrator.*

1. Upon the audit of the account of an ancillary administrator, in the absence of exceptional circumstances, the balance for distribution will be awarded to the domiciliary executor or administrator.

2. The court cannot assume that there are no creditors residing at the domicile who may have claims against the fund.

*Practice, O. C.—Effect of order to take depositions—Act of June 7, 1917.*

3. An order to take depositions under section 20 (*b*) 3 of the Orphans' Court Act of June 7, 1917, P. L. 363, is not a ruling upon the competency or relevancy of the testimony to be taken, and, hence, such testimony may be rejected when offered at the audit.

Exceptions to adjudication. O. C. Phila. Co., Oct. T., 1922, No. 496.

The account was filed by John T. Hall, ancillary administrator. The essential facts appear from the following extract from the opinion of the auditing judge, Lamorelle, P. J.:

"Agnes C. Hall died April 15, 1921, survived by a husband, John T. Hall, and by no children or descendants of deceased child or children. Ancillary letters were granted said John T. Hall May 5, 1921.

"Both Agnes C. Hall and her husband, John T. Hall, were residents of Camden, in the State of New Jersey. Mrs. Hall was taken sick and brought to her brother's house in Philadelphia, at which place, after some five days' illness, she died.

"There was on deposit in her name with Gimbel Brothers, $560.43; with Western Savings Fund Society, $722.07, and with Philadelphia Savings Fund Society, $353.23, and, in addition thereto, she was possessed of $100 worth of Fourth Liberty Loan Bonds, appraised at $87.50.

"On April 14, 1921, one day before she died, and while she was in this jurisdiction, she made a will describing herself of the City of Philadelphia, wherein, after directing the payment of her just debts and funeral expenses, she bequeathed and devised unto her husband house and lot, known as No. 1820 Fillmore Street, Camden, New Jersey, and gave the rest of her estate unto her brother, Thomas P. McKeown, whom the auditing judge understands to be a resident of this city.

"From the record in this court, it appears that letters of administration were granted John T. Hall, surviving husband, by the Surrogate of Camden County, May 5, 1921, which letters were revoked by the Orphans' Court of

2 D. & C.

Camden County, March 8, 1922; that on April 21, 1922, letters ancillary in this jurisdiction theretofore granted to John T. Hall were revoked by the Register of Wills of this county; and that the last will and testament of Agnes C. Hall was admitted to probate and letters testamentary thereon granted by the Surrogate of Camden County, in the State of New Jersey, to Thomas P. McKeown, the executor named in said will, on March 25, 1922.

"John T. Hall, surviving husband, claims that all the property for which he as ancillary administrator accounts is his property and not the property of his wife.

"In that on the record both he and his wife were non-residents, and in that the Orphans' Court of the County of Camden, in the State of New Jersey, has assumed jurisdiction, the auditing judge declined to pass upon the question of ownership and ruled that the fund should be remitted to the place of the domicile for proper settlement and adjustment, wherein all questions of ownership and distribution could be raised. To this ruling, Mr. Scarborough, representing John T. Hall in his individual capacity, objected and was granted an exception of record."

*Henry W. Scarborough*, for exceptant.

*A. B. Repetto*, for New Jersey executor, contra.

GEST, J., March 24, 1923.—The entire balance in the hands of the ancillary administrator was claimed by him as his own property, but as both the decedent and the claimant, who was her husband, were domiciled in New Jersey, the auditing judge awarded the balance to the executor at the domicile, so that all questions of ownership and distribution might there be raised. This was in accordance with the general rule upon the subject, and while, in exceptional cases, the court having ancillary jurisdiction will distribute the fund, the facts must be sufficient to require such exercise of its discretion. This case, however, clearly falls within the ordinary rule, as appears from Barry's Appeal, 88 Pa. 131, where the Supreme Court expressly decided that the Orphans' Court must direct the balance in the hands of the ancillary administrator to be paid to the administrator at the domicile without passing on the claim of a creditor whose domicile is the same as that of the decedent. See, also, Gray's Appeal, No. 27, 116 Pa. 256, and Middleby's Estate, 254 Pa. 328. In Del Valle's Estate, 17 W. N. C. 30, 17 Phila. 505, 2 Sadler, 270, relied on by the exceptant, the facts were essentially different, as appears from Judge Penrose's careful analysis of them in his opinion, and subsequently to that case the principle of Barry's Appeal was applied in Warrington's Estate, 7 Dist. R. 712. It is not necessary to prolong the discussion by reference to other cases, as those above cited are decisive on this point. We cannot assume, moreover, that there are no creditors residing at the domicile who may have claims against the fund. The letters testamentary in New Jersey were granted as late as March 25, 1922, and the New Jersey executor objected to the auditing judge taking jurisdiction of the claim.

The learned counsel for exceptant, however, argued that the depositions taken in support of the husband's claim to the estate should have been received by the auditing judge because they were taken in pursuance of an order of this court made on petition, in accordance with the provisions of section 20 (b) 3 of the Orphans' Court Act of 1917; but this clause merely regulates procedure, and the judge who granted permission to take the deposition could not possibly rule on the competency or relevancy of the testimony in advance. Counsel for the New Jersey executor objected, when the depositions were taken, on the very ground which he afterwards took before the auditing judge,

who was entirely justified in rejecting them for the reasons stated in the adjudication.

All the exceptions are dismissed and the adjudication is confirmed absolutely.

GUMMEY, J., did not sit.