## Hewitt Estate

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*William M. Adshead,* and *Peck, Young & Van Sant,* for exceptants.

*Alvin M. Weiss,* and *Astor & Weiss,* contra.

KLEIN, P. J., March 4, 1968.—Edwin S. Hewitt, an undertaker, died September 26, 1966, survived by his wife, Catherine A. Hewitt, and by Edwin Mace Hewitt, a son by a prior marriage. In his will, testator named Fidelity-Philadelphia Trust Company (now the Fidelity Bank) executor and trustee. After making two pecuniary gifts totalling $11,000, he disposed of the residue of his estate in the following manner:

"All the rest, residue and remainder of my estate, both real and personal of whatsoever nature and wheresoever situate, I give, devise and bequeath unto my wife, CATHERINE A. HEWITT, absolutely and in fee, provided however, that she does not predecease me and shall survive me for a period of thirty (30) days".

In the event his wife should predecease him, or fail to survive him for a period of 30 days, he provided that all the residue of his estate, with the exception of a piece of real estate in New Jersey, should be placed in trust with Fidelity for the benefit of his son, Edwin Mace Hewitt. He also gave his son the option to purchase his undertaking business from the trustee, if the trust became effective.

Catherine A. Hewitt, the widow, survived her husband and is presently living.

On July 24, 1967, upon petition of the son, a citation was issued directed to Fidelity "to show cause why a supplementary inventory, to include the certain undertaking business situate at 248 West Girard Avenue, Philadelphia, Pennsylvania, should not be filed". An answer was filed alleging that the petitioner son had no interest in his father's estate and that the undertaking business was owned by decedent and his wife, jointly, and, consequently, became her property absolutely upon his death and formed no part of his estate.

The hearing judge, in a carefully considered, scholarly opinion, reviewed the law relating to funeral directors and the operation of undertaking establishments, and concluded that decedent's undertaking business, including good will, was an asset of his estate and directed the executor to file a supplemental inventory including this item as an estate asset. He also directed that an injunction, entered January 20, 1967, restraining the executor and the widow from disposing of the business, be continued until further order of the court.

We refrain from making any comment with respect to the hearings judge's conclusion that decedent's undertaking business formed part of his estate, because we are of the opinion that Edwin Mace Hewitt had no interest of any kind or nature in this estate. Any in-

terest which he might have had was contingent upon his stepmother's, Catherine A. Hewitt, predeceasing testator or failing to survive him for a period of 30 days. Since she is alive, the son's interest never came into being and is absolutely void.

Section 405 of the Fiduciaries Act of April 18, 1949, P. L. 512, provides:

"Objections to the inventory may be made *by any party in interest* at any time up to and including the time fixed by rule of court for making objections to the first account of the personal representative". (Italics supplied.)

Edwin Mace Hewitt, however, had no interest in this estate. Hence, he is not a "party in interest" within the meaning of section 405. In Kilpatrick Estate, 368 Pa. 399 (1951), our former colleague, the late Mr. Justice Ladner, said at page 402:

"It is well settled that one having no direct interest in an estate cannot demand an account, or, when an account is filed, interfere in its settlement or in any proceeding based upon it: Appeal of Del Valle, 2 Sadler 270, affirming In re Del Valle's Estate, 17 W. N. C. 30; and cases cited above". See also Brubaker's Estate, 55 Lanc. 119 (1957). Cf. Dettra Estate, 29 D. & C. 2d 429 (1963), in which the Commonwealth was held to have an interest in a will contest in which it was alleged that there were no known heirs.

Accordingly, we rule that testator's son, having no interest in this estate, is a stranger thereto, and cannot be heard to challenge the manner in which it is being administered.

Ordinarily, this would be the end of the matter. However, it is evident that the Commonwealth of Pennsylvania, which has been said to be the ward of the courts, may have an interest in this question because if the business is an asset of the estate, it would

be subject to transfer inheritance taxes. Moreover, creditors may be deprived of substantive rights if all of the estate's assets are not included in its administration. Apparently, none of these parties has received notice of these proceedings. If the legacies are paid in full and the claims of the Commonwealth and possible creditors satisfied, then all of the questions raised by the present proceedings would be laid to rest and become moot.

Although the orphans' court is a court of limited jurisdiction, exercising only such power as is given by statute, expressly or by necessary implication, it applies the rules and principles of equity in the exercise of its limited jurisdiction: Freihofer Estate, 405 Pa. 165, 168 (1961). The Orphans' Court Act of August 10, 1951, P. L. 1163, sec. 304, 20 PS §2080.304, confers upon the orphans' court all legal and equitable powers required for or incidental to the exercise of its jurisdiction. Within its limited jurisdiction, the court's jurisdiction is exclusive and, therefore, necessarily as expansive as the demands of justice: Shollenberger's Appeal, 21 Pa. 337, 341 (1853) ; Bronstein Estate (No. 2), 31 D. & C. 2d 664 (1963). The process of the orphans' court is flexible and its power is only limited by the necessities of the case and by its duty to administer equity in accordance with established rules: Odd Fellows Savings Bank Appeal, 123 Pa. 356 (1888). See Mellinger's Estate, 334 Pa. 180 (1939) ; Heinz's Estate, 313 Pa. 6 (1933). When a case is once presented to the court for decision, it will retain jurisdiction until the rights of all parties in interest are fully protected and adjudicated.

Accordingly, we will follow the long-established practice of the orphans' court in circumstances of this nature and direct the executor to file an account, so that formal notice may be given to all of the parties in interest, who will have an opportunity to appear

and present their respective positions at the audit. Accordingly, we enter the following:

### DECREE

And now, March 4, 1968, it is ordered and decreed that:

1. The exceptions are dismissed pro forma and without prejudice to the right of Edwin Mace Hewitt to present such claim at the audit of the executor's account as he deems necessary to protect his position in the matter;

2. The Fidelity Bank, the executor, is directed to file an account of its administration within 30 days of the date of the decree;

3. The executor is directed to include in said account decedent's interest in his undertaking business, including good will, which item is to be carried short at the nominal value of $1; and

4. The executor is directed to forward a copy of this opinion to the Attorney General of Pennsylvania and to all known creditors whose claims have not been paid in full.